

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00282-CV

**SONNY WILSON,**

                                                            **Appellant**

 **v.**

**TDCJ-ID,**

                                                            **Appellee**

_____

### From the 12th District Court
### Walker County, Texas
### Trial Court No. 23872

_____

## OPINION

_____

Sonny Wilson, a Texas inmate, filed an *in forma pauperis* lawsuit against the Texas Department of Criminal Justice, complaining that the funds in his inmate trust account were improperly seized after a disciplinary action finding him liable for property damage. The TDCJ filed an *amicus curiae* advisory requesting dismissal of the suit. The trial court dismissed the suit as frivolous under Chapter 14 of the Civil Practice and Remedies Code. On appeal, Wilson argues that: (1) the trial court's judgment is deficient; and (2) his suit was improperly dismissed as frivolous. We affirm.

**CHAPTER FOURTEEN**

In his second point of error, Wilson challenges the dismissal of his suit as frivolous, contending that his claims have an arguable basis in law.

**Standard of Review**

Chapter 14 governs inmate litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.001-.014. (Vernon 2002). A trial court may dismiss a suit under Chapter 14 if it is frivolous, considering whether: (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. *Id*. at § 14.003(a)(2), (b)(1)-(4).

We normally review a trial court's dismissal of an inmate's suit under Chapter 14 for abuse of discretion. *See Powell v. Clements*, 220 S.W.3d 138, 139 (Tex. App.—Waco 2007, pet. denied). However, when, as here, the trial court determines without a hearing that a claim is frivolous, that decision may be affirmed on appeal only if the claim has no arguable basis in law. *Long v. Tanner*, 170 S.W.3d 752, 754 (Tex. App.—Waco 2005, pet. denied) (citing *Retzlaff v. Tex. Dep't of Crim. Justice.*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). We review this issue de novo. *Id*. We take the allegations of the plaintiff's petition as true. *Id*. (citing *Mullins v. Estelle High Sec. Unit*, 111 S.W.3d 268, 272 (Tex. App.—Texarkana 2003, no pet.)). We examine the claims asserted and the relief requested "to determine whether, as a matter of law,

the petition stated a cause of action that would authorize relief."  *Id*. (quoting *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.)).

## Analysis

In his petition, Wilson complained of the "improper garnishment and conversion" of the funds in his trust account in violation of the garnishment procedures outlined in part VI, section 4 of the Rules of Civil Procedure and chapter 63 of the Civil Practice and Remedies Code and in violation of the due process provisions of the United States Constitution and of the Texas Constitution.[1]  He sought "declaratory, injunctive and compensatory relief."  The TDCJ argues that Wilson's suit was properly dismissed because his claims have no arguable basis in law.

**Garnishment Procedures**

Citing *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the TDCJ argues that Wilson's challenge constitutes an impermissible collateral attack on the validity of his disciplinary action.[2]  However, section 500.002 of the Government

---

[1]    Wilson's response to the TDCJ's *amicus curiae* advisory and his appellate brief raise additional arguments attacking his disciplinary hearing: (1) damages awarded to the TDCJ are excessive; (2) he was not allowed to attend the disciplinary hearing or afforded an opportunity to present evidence; and (3) the TDCJ violated many of its own administrative directives.  Because these issues were not raised in his step one and step two grievances, he has not exhausted administrative remedies as to these issues and we will not address them.  *See Wolf v. Tex. Dep't of Crim. Justice*, 182 S.W.3d 449, 451 (Tex. App.—Texarkana 2006, pet. denied) (because inmate's grievance did not address the issues raised in his petition, he failed to obtain "a final administrative decision on those issues"); *see also Riddle v. TDCJ-ID*, No. 13-05-00054-CV, 2006 Tex. App. Lexis 1167, at *7 (Tex. App.—Corpus Christi Feb. 9, 2006, pet. denied) (mem. op.) (administrative remedies not exhausted as to individuals not named in grievance).

[2]    In *Heck*, the United States Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove  that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

Code, from which the TDCJ derives its authority to seize an inmate's trust account upon finding the inmate liable for property damage, expressly provides that an inmate may seek judicial review of a disciplinary action after exhausting administrative remedies. *See* TEX. GOV'T CODE ANN. § 500.002(c)-(d) (Vernon 2004).

Nevertheless, we cannot say that Wilson's claim has an arguable basis in law. In *Abdullah v. State*, 211 S.W.3d 938 (Tex. App.—Texarkana 2007, no pet.), Abdullah sought to recover funds taken from his inmate trust account pursuant to a trial court's order to charge the account for costs incurred in the course of Abdullah's conviction. *Id*. at 940. Neither garnishment procedures nor any other procedures had been followed; there were "no pleadings, no proper writ of garnishment, no notifications, no warnings, and no opportunity to respond"; and the judgment did not state the amount of costs incurred. *Id*. at 941.

In *Abdullah*, the State relied on Government Code section 501.014(e) to justify its withdrawal of funds from Abdullah's inmate trust account. *See id*. at 942; *see also* TEX. GOV'T CODE ANN. § 501.014(e) (Vernon 2004). The Court defined "garnishment" as "a judicial proceeding in which a creditor asks a court to order a third party (the criminal justice system) to turn over funds held by it as trustee for the benefit of a third party (the inmate) to a creditor (the State)," as acknowledged by section 63.007 of the Civil Practice and Remedies Code. *Abdullah*, 211 S.W.3d at 942; *see* TEX. CIV. PRAC. & REM.

---

tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372-73, 129 L. Ed. 2d 383 (1994).

CODE ANN. § 63.007 (Vernon 2008). Section 63.007 "allows a writ of garnishment to be issued against an inmate trust fund account" pursuant to section 501.014. *Abdullah*, 211 S.W.3d at 942; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 63.007(a). The Court held that a judgment-creditor who "intends to avail himself of the State's aid in effecting a deprivation of property…must strictly comply with the pertinent rules." *Abdullah*, 211 S.W.3d at 943. Because the proper procedures had not been followed and the removal of funds from Abdullah's trust account involved a property interest, Abdullah was deprived of procedural due process. *Id*.

Here, the TDCJ derives its authority to withdraw money from Wilson's account from section 501.014(f), not section 501.014(e). *See* TEX. GOV'T CODE ANN. § 501.014(f)(8). Unlike subsection (e), subsection (f) does not contemplate situations where "a creditor asks a court to order a third party (the criminal justice system) to turn over funds held by it as trustee for the benefit of a third party (the inmate) to a creditor (the State)." *Abdullah*, 211 S.W.3d at 942.

Because the TDCJ did not seize Wilson's account to pay the claim of a third-party, it was not required to follow garnishment procedures. Wilson's account was not improperly garnished or converted, but was debited in accordance with sections 500.002 and 501.014(f)(8). *See* TEX. GOV'T CODE ANN. § 500.002(c); *see also* TEX. GOV'T CODE ANN. § 501.014(f)(8).

**Due Process**

Wilson alleges that the seizure of his funds violated the due process provisions of the Texas Constitution and of the United States Constitution. When assessing due

process, we consider whether the individual "possess[es] a protected interest to which due process protection was applicable" and was "afforded an appropriate level of process." *Abdullah*, 211 S.W.3d at 942 n.7 (citing *Copelin-Brown v. N. M. State Personnel Office*, 399 F.3d 1248, 1254 (10th Cir. 2005)).

Wilson possesses a property interest in his inmate trust account. *See id.* at 943. Thus, the question becomes whether Wilson received "an appropriate level of process." *Id.* at 942 n.7. Wilson claims that due process was violated because he was not formally notified of the seizure of his funds. He believed that damages had not been "formally assessed" because his trust account statements reflected a positive balance. He first learned of the seizure after filing step one and step two grievances to complain of conflicting account statements.

The TDCJ's "Offender Orientation Handbook" notifies inmates that the damage or destruction of state property may result in the assessment of damages and that the "TDCJ may seize the contents of the offender's trust fund account and award itself damages for the value of the property damaged." TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK 50 (Nov. 2004). This placed Wilson on notice that funds in his account could be seized as a penalty for the destruction of state property.

Moreover, Wilson concedes that a disciplinary report was issued against him for destruction of property, a hearing was held outside his presence, and damages in the amount of $47.50 were assessed against him. The TDCJ's disciplinary procedures provide that, after the hearing, the inmate must receive a copy of the "written record of the hearing (Form I-47MA, Disciplinary Report and Hearing Record)." *See* TEX. DEP'T

OF CRIMINAL JUSTICE, DISCIPLINARY RULES AND PROCEDURES FOR OFFENDERS 14 (Jan. 2005). This information includes the "penalty imposed." *Id*. at 15. According to the affidavit of Mary Pegoda, inmate trust fund supervisor, Wilson would have been informed of the hold on his account by receiving his "disciplinary conviction" and monthly account statements. As indicated by his pleadings, including citations to Form I-47MA, Wilson was notified of the penalty imposed.[3] Despite Wilson's receipt of conflicting information, the record also includes a statement indicating a hold in the amount of $47.50.

In *Abdullah*, due process was violated because the proper procedures were not implemented. *See Abdullah*, 211 S.W.3d at 943. Here, the required hearing was conducted, Wilson was found liable for destruction of property, the TDCJ provided Wilson with a Form I-47MA, and the TDCJ withdrew funds from Wilson's account as authorized by statute. *See* TEX. GOV'T CODE ANN. § 500.002(c); *see also* TEX. GOV'T CODE ANN. § 501.014(f)(8); DISCIPLINARY RULES AND PROCEDURES FOR OFFENDERS at 14-15. The proper procedures were followed and Wilson was "afforded an appropriate level of process." *Abdullah*, 211 S.W.3d at 942 n.7.

**Tort Claims Act**

Under the Tort Claims Act, a governmental unit is liable for property damage, injury, or death caused by: (1) the operation or use of a motor-driven vehicle; (2) a condition or use of tangible personal property; or (3) a premises defect. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021-.022 (Vernon 2005).

---

[3] The record does not contain a copy of the Form I-47MA.

Wilson contends that his claim is cognizable under the Tort Claims Act, citing *Retzlaff* and *Texas Department of Corrections v. Winters*, 765 S.W.2d 531 (Tex. App.—Beaumont 1989, writ denied). In *Retzlaff*, the Fourteenth Court held that sovereign immunity had not been waived because the inmate failed to allege *personal injury* in his grievances. *See id*. at 654. *Retzlaff* does not address waiver for the type of complaint raised by Wilson.

In *Winters*, the TDCJ was sued for sending a telegram erroneously informing an inmate's family that he had died. *See Winters*, 765 S.W.2d at 531. The Beaumont Court held that "[t]he machine used to transmit the message was certainly tangible personal property, and its misuse falls within the [Tort Claims] Act." *Id*. at 532.

In *Sawyer v. Texas Dep't of Crim. Justice*, 983 S.W.2d 310 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), the Fourteenth Court declined to follow *Winters*. Sawyer, an inmate, claimed that his receipt of contradictory printouts reflecting different parole dates constituted use of tangible personal property because a computer was used to generate the printouts or that the printouts themselves were tangible personal property. *See Sawyer*, 983 S.W.2d at 311-12. The Court noted that *Winters* relied on *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex. 1983), involving the misuse of "electrocardiogram equipment, which the plaintiff claimed was the proximate cause of her husband's death." *Id*. at 312. According to the Court, the "alleged injury arose from the information conveyed," not the "equipment used to communicate information."[4] *Id*.

---

[4]     Moreover, *Salcedo* has been superseded because it was "decided under the pre-codified version of the [Tort Claims] Act which called for liberal construction of the waiver provisions," referring to the "Legislature's post-*Salcedo* changes to the Act in 1985, i.e., deletion of the word 'some' before use and

"Information or misinformation remains *information,* whether it is transmitted by electronic equipment or by word of mouth." *Id.* "[T]he TDCJ did not waive the sovereign immunity afforded by the Texas Tort Claims Act through the erroneous use of information contained in the computer or the computer printout." *Id.*

We agree with the reasoning in *Sawyer.* Sovereign immunity has not been waived for the damage of which Wilson complains. *See id.; see also Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994) ("information, which may or may not be recorded in a patient's medical records, does not constitute tangible personal property…and [] the State has not waived governmental immunity for negligence involving the use, misuse, or nonuse of information in a patient's medical records").

**Conclusion**

Because the trial court could have concluded that Wilson's causes of action have no arguable basis in law, it properly dismissed Wilson's suit as frivolous under Chapter 14.[5] We overrule Wilson's second point of error.

---

condition, [and] elimination of the mandate to liberally construe the waiver provisions." *Tex. Tech Univ. v. Ward*, No. 07-07-0451-CV, 2008 Tex. App. Lexis 5930, at *28-29 (Tex. App.—Amarillo Aug. 6, 2008, no pet. h.). "Since then, the mandate for liberal construction has been repealed." *Id.* at 28.

[5] Because Wilson could not show that the TDCJ's conduct was wrongful, he was not entitled to injunctive relief. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("injunctive relief may only be granted upon a showing of (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law"). Nor was Wilson's mere request for declaratory relief sufficient to invoke the Declaratory Judgments Act. *See Jones v. Quarterman*, No. 09-07-00392-CV, 2008 Tex. App. Lexis 3172, at *9 (Tex. App.—Beaumont May 1, 2008, no pet. h.) (mem. op.) ("summary statement" asking trial court to "'issue declaratory judgment' without identifying the subject matter of the declaration" was insufficient).

## THE JUDGMENT

In his first point of error, Wilson contends that the trial court's judgment fails to: (1) explain how Wilson failed to comply with Chapter 14; (2) indicate whether the dismissal is with or without prejudice; or (3) contain a judge's signature.

We first note that Wilson's complaint regarding the absence of a signed judgment is moot. The district clerk has filed a supplemental record which contains a signed copy of the judgment. As for Wilson's remaining arguments, the TDCJ argues that Wilson failed to preserve these issues for appellate review. We agree.

"To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144 (Tex. App.—Dallas 2006, no pet.). Wilson complains of the trial court's judgment for the first time on appeal. Because he did not bring this complaint before the trial court, it is not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *see also Dal-Chrome*, 183 S.W.3d at 144.

The judgment is affirmed.


                                         FELIPE REYNA
                                         Justice

Before Chief Justice Gray,
       Justice Vance, and
       Justice Reyna
       ("Chief Justice Gray concurs in the Court's judgment.  A separate opinion will
not issue.")
Affirmed
Opinion delivered and filed September 10, 2008
[CV06]